Slip Op. 07-4

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| SHANDONG HUARONG GENERAL GROUP CORPORATION and LIAONING MACHINERY IMPORT & EXPORT CORPORATION, | : <br> : <br> : <br> : <br> : <br> : Before: Richard K. Eaton, Judge |
| Plaintiffs, | : <br> : Court No. 01-00858 |
| v. | : <br> : |
| UNITED STATES, | : <br> : |
| Defendant. | : <br> : |

MEMORANDUM OPINION

[United States Department of Commerce's Final Results of
Redetermination Pursuant to Court Remand sustained.]

Dated: January 9, 2007

*Hume & Associates, PC* (*Robert T. Hume*), for plaintiffs.

*Peter D. Keisler*, Assistant Attorney General, Civil Division,
United States Department of Justice; *David M. Cohen*, Director,
Commercial Litigation Branch, Civil Division, United States
Department of Justice; *Jeanne E. Davidson*, Deputy Director,
Commercial Litigation Branch, Civil Division, United States
Department of Justice (*Stephen C. Tosini*); *Ada E. Bosque*, United
States Department of Commerce Office of Chief Counsel for Import
Administration, of counsel, for defendant.

Eaton, Judge: This matter is before the court following a

third remand to the United States Department of Commerce

Court No. 01-00858                                            Page 2

("Commerce" or the "Department").[1]  In *Shandong Huarong General Group Corporation v. United States*, 29 CIT \_\_, Slip Op. 05-129 (Sept. 27, 2005) (not published in the Federal Supplement) ("*Huarong III*"), the court remanded the Department's second remand determination in the ninth administrative review of the antidumping duty order covering the importation of heavy forged hand tools ("HFHTs") from the People's Republic of China ("PRC"). *See* HFHTs From the PRC, 66 Fed. Reg. 48,026 (ITA Sept. 17, 2001) (final determination) ("Final Results").  Plaintiffs Shandong Huarong General Group Corporation ("Huarong") and Liaoning Machinery Import & Export Corporation ("LMC") (collectively "plaintiffs" or the "Companies") challenged that determination with respect to the Department's decision to apply adverse facts available ("AFA") and to assign the Companies a 139.31 percent[2] dumping rate to their sales of bars and wedges.[3]  The court found

---

[1]      Ames True Temper, as *amicus curiae*, has filed comments to Commerce's remand results.

[2]      In the Final Results, both companies received the PRC-wide rate for this review of 47.88 percent.  *See* Final Results, 66 Fed. Reg. at 48,028, 48,030.

[3]      In cases where a respondent:

(A) withholds information that has been requested by the administering authority or the Commission under [19 U.S.C. § 1677],

(B) fails to provide such information by the deadlines for submission of the information or in the form and manner requested, subject

(continued...)

Court No. 01-00858                                          Page 3

that Commerce failed to support its selection of the 139.31

percent rate with substantial evidence, that the rate was

aberrational and punitive, and remanded the determination with

instructions for Commerce to select another justifiable rate.  On

the third remand, Commerce selected a rate of 47.88 percent to

apply as AFA.  *See* Final Results of Redetermination Pursuant to

Court Remand (ITA Mar. 3, 2006) ("Third Remand Determination") at

1.  The Companies now challenge the Department's selection on

remand of the 47.88 percent rate applicable to their sales of

bars and wedges.  Jurisdiction lies with 28 U.S.C. § 1581(c)

(2000) and 19 U.S.C. § 1516a(a)(2)(B)(iii) (2000).  For the

---

[3](...continued)
        to subsections (c)(1) and (e) of section
        1677m of this title,

        (C) significantly impedes a proceeding under
        this subtitle, or

        (D) provides such information but the
        information cannot be verified as provided in
        section 1677m(i) of this title,

        the administering authority and the
        Commission shall, subject to section 1677m(d)
        of this title, use the facts otherwise
        available in reaching the applicable
        determination under this subtitle.

19 U.S.C. § 1677e(a) (2000).

    If Commerce determines that a respondent has "failed to
cooperate by not acting to the best of its ability to comply with
a request for information," the Department may then "use an
inference that is adverse to the interests of that party in
selecting from among the facts otherwise available."
19 U.S.C. § 1677e(b).

Court No. 01-00858                                          Page 4

following reasons, the court sustains Commerce's Third Remand

Determination.


                            BACKGROUND

     The facts of this case have been set forth adequately in the

court's prior opinions.  A brief discussion of the facts relevant

to the instant action follows.  In the Final Results, Commerce

used AFA to set the Companies' dumping margins and assigned the

Companies the PRC-wide rate of 47.88 percent for their sales of

bars and wedges.  *See* Final Results, 66 Fed. Reg. at 48,028.  The

court agreed that Commerce supported with substantial evidence

its application of AFA to the Companies, but because it found

that the Companies had demonstrated their independence from the

PRC-wide entity, it remanded the Final Results and instructed

Commerce to assign the Companies separate rates.  *See Shandong*

*Huarong Gen. Group Corp. v. United States*, 27 CIT 1568, 1596

(2003) (not published in the Federal Supplement) ("*Huarong I*");

*see also* Third Remand Determination at 5 ("Huarong received AFA,

in part, because it failed to report certain transactions as

being its own sales, rather than another company's sales, while

LMC received AFA because certain transactions it reported as its

own sales were, in fact, made by another company.").  On remand,

Commerce found that the Companies were entitled to separate rates

and assigned each of them an individual rate of 139.31 percent.

Court No. 01-00858                                          Page 5

That rate was the highest antidumping duty rate from any prior

segment of the proceeding.  Because it found that the Department

failed to justify its selection of the 139.31 percent rate, the

court again remanded the matter.  *See Shandong Huarong Gen. Group*

*Corp. v. United States*, 28 CIT __, __, Slip Op. 04-117 at 17–18

(Sept. 13, 2004) (not published in the Federal Supplement)

("*Huarong II*").

    In accordance with the court's remand, the Department

attempted to explain its decision to apply the 139.31 percent

rate to the Companies' sales of bars and wedges, but the court

found the effort insufficient.  *See Huarong III*, 29 CIT at

__, Slip Op. 05-129 at 21–22.  Specifically, the court found the

rate both aberrational and punitive, and further concluded that

Commerce failed to support adequately the reasonableness and the

relevance of that rate to the Companies' sales.  The court

remanded the matter for a third time with instructions for the

Department to choose from the following two rates: "(1) the

Companies' rates from a previous review, with a built-in increase

as a deterrent to non-compliance; or (2) a calculated rate that

accurately reflects what the Companies' rates would have been had

they cooperated, with a built-in increase as a deterrent to non-

compliance."  *Id.* at __, Slip Op. 05-129 at 22.

    In the Third Remand Determination, Commerce returned to the

rate of 47.88 percent, which is both the country-wide rate in

Court No. 01-00858                                    Page 6

this administrative review and the rate calculated for another

company in the 1992–1993 administrative review.  *See* Third Remand

Determination at 1, 4.  For the reasons that follow, the court

sustains the selection of that rate.


STANDARD OF REVIEW

The court "shall hold unlawful any determination, finding,

or conclusion found . . . to be unsupported by substantial

evidence on the record or otherwise not in accordance with

law."  19 U.S.C. § 1516a(b)(1)(B)(i).  "Substantial evidence is

'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Huaiyin Foreign Trade Corp.*

*(30) v. United States*, 322 F.3d 1369, 1374 (Fed. Cir. 2003)

(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

The existence of substantial evidence is determined "by

considering the record as a whole, including evidence that

supports as well as evidence that 'fairly detracts from the

substantiality of the evidence.'"  *Id.* (quoting *Atl. Sugar, Ltd.*

*v. United States*, 744 F.2d 1556, 1562 (Fed. Cir. 1984)).


DISCUSSION

When selecting a rate to apply as AFA, "Commerce must do

more than assume any prior calculated margin for the industry is

reliable and relevant."  *Ferro Union, Inc. v. United States*, 23

CIT 178, 204, 44 F. Supp. 2d 1310, 1334 (1999).  Indeed, "[i]n

order to comply with the statute and the [Statement of

Administrative Action]'s statement that corroborated information

is probative information, Commerce must assure itself that the

margin it applies is relevant, and not outdated, or lacking a

rational relationship to [the respondent]."  *Id.* at 205, 44 F.

Supp. 2d at 1335.  In its previous remand determination, Commerce

did not meet the standard set forth in *Ferro Union*.  In

particular, Commerce failed to demonstrate either the

reasonableness or the relevance of the 139.31 percent rate to the

Companies.  *See Huarong III*, 29 CIT at __, Slip Op. 05-129 at 21;

*see also* 19 U.S.C. § 1677e(c).[4]  The court stated that the law

"requires that an assigned rate relate to the company to which it

is assigned."  *Huarong III*, 29 CIT at __, Slip Op. 05-129 at 11.

In addition, the court stated that where a rate from a previous

review is selected as AFA, if that prior rate was a weighted-

average margin, "then the preferred method would be to use the

---

[4]     Pursuant to that provision:

> When the administering authority or the
> Commission relies on secondary information
> rather than on information obtained in the
> course of an investigation or review, the
> administering authority or the Commission, as
> the case may be, shall, to the extent
> practicable, corroborate that information
> from independent sources that are reasonably
> at their disposal.

19 U.S.C. § 1677e(c).

Court No. 01-00858                                              Page 8

Companies' own weighted-average margins for the same review."

*Id.* at __, Slip Op. 05-129 at 17.  Moreover, the court found that

the 139.31 percent rate selected was aberrational and punitive.

*Id.* at __, Slip Op. 05-129 at 21.  Thus, in order to be

sustained, Commerce's current selection of the 47.88 percent AFA

rate must be both reliable and relevant to the Companies.

     In plaintiffs' view, Commerce failed to corroborate its

selection of the 47.88 percent rate in accordance with 19 U.S.C.

§ 1677e(c).  *See* Pls.' Comments on Dep't of Commerce's Final

Results of Redetermination Pursuant to Court Remand at 7.

Specifically, plaintiffs claim that: (1) Commerce did not

establish the reliability of the 47.88 percent rate because it

failed to support the rate with an independent source; (2)

Commerce failed to explain how a 47.88 percent rate that was

applied to an unrelated company in a prior review was relevant to

the Companies here; and (3) Commerce incorrectly employed a

transaction-specific comparison method to determine the deterrent

amount in contravention of the court's instructions.  *See id.* at

7, 9, 11–15.

     Despite plaintiffs' contentions, the court finds that

Commerce has explained adequately the reliability and relevance

of the 47.88 percent AFA rate with respect to the Companies'

sales of bars and wedges, and finds the method employed by

Commerce in reaching its conclusion reasonable.  Here, Commerce

selected 47.88 percent, the PRC-wide rate for the underlying
review and the rate that was applied to Fujian Machinery &
Equipment Import & Export Corporation ("FMEC") during the
1992-1993 administrative review of the bars/wedges order, as AFA.
*See* Third Remand Determination at 4.  It selected this rate only
after first finding that, had it cooperated, LMC would have
received a rate of 27.18 percent and, likewise, Huarong would
have been subject to a rate of 34.00 percent.  *See id.*  Commerce
based this finding on the highest previously calculated rates for
each company.  *See id.*  Commerce then chose to apply the 47.88
percent rate, in part, because that rate, having been previously
verified, was reliable and because the resulting 13.88 percent
increase in Huarong's rate and the 20.70 percent increase in
LMC's rate was sufficient to deter any future non-compliance.
*See id.* at 9.

    An AFA rate must be both reliable and bear a rational
relationship to the respondent.  *See Huarong III*, 30 CIT at __,
Slip Op. 05-129 at 11-12; *see also F. LLI De Cecco Di Fillippo
Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032
(Fed. Cir. 2000) ("It is clear from Congress's imposition of the
corroboration requirement in 19 U.S.C. § 1677e(c) that it
intended for an adverse facts available rate to be a reasonably
accurate estimate of the respondent's actual rate, albeit with
some built-in increase intended as a deterrent to non-

compliance.").  The court finds that Commerce has sufficiently

demonstrated the reliability of the 47.88 percent rate.

According to Commerce:

> In accordance with our normal practice, the
> Department reviewed all potential rates in
> the history of the proceeding which could be
> applied as an AFA rate in the underlying
> segment.  For this remand determination, the
> Department has selected as AFA the 47.88
> percent calculated for [FMEC], during the
> 1992-1993 administrative review of the
> bars/wedges order.  This rate was based upon
> verified data and has not been judicially
> invalidated.

Third Remand Determination at 4 (citations omitted).  Commerce

further stated:

> [U]nlike other types of information, such as
> input costs or selling expenses, there are no
> independent sources for calculated dumping
> margins.  Thus, in an administrative review,
> if the Department chooses as total AFA a
> dumping margin from a prior segment of the
> proceeding, it is not necessary to question
> the reliability of the margin.  In the
> instant case, the rate selected as AFA, 47.88
> percent, was calculated using verified
> information provided by FMEC during the
> 1992-1993 administrative review of the
> bars/wedges order.  Furthermore, this rate
> was not judicially invalidated, and we have
> no new information that would lead us to
> reconsider the reliability of the rate being
> used in this case.

*Id.* at 5-6 (citations omitted).

     In other words, by using a rate from a previous

investigation, Commerce sought to satisfy the reliability

standard found in 19 U.S.C. § 1677e(c).  Thus, the court

concludes that Commerce established the rate's reliability as

required by statute, in part, because the Department selected a

rate that was based on verified information provided by FMEC in

the 1992–1993 review.

In addition, the court finds that Commerce demonstrated the

relevance of the 47.88 percent rate to both Huarong and LMC.  In

this case, to satisfy the court's concerns with respect to the

relevance of the rate to the Companies, Commerce first estimated

what the Companies' rates would have been had they cooperated.

> [F]or non-cooperative respondents, a
> conservative estimate of the lower bound
> [sic] of what the respondent's margin would
> be had it cooperated is the highest-weighted
> average margin calculated for that respondent
> in a prior review.  In this case, using the
> conservative assumption, the Department
> expects that, at a minimum, Huarong and LMC
> would have received dumping margins of 34.00
> and 27.18 percent, respectively, had they
> cooperated.

Third Remand Determination at 9.  The Department then considered

an amount to be added to those rates to deter future non-

compliance.  To test the relevance of that additional amount to

the Companies, Commerce examined the Companies' transaction-

specific margins.  *See id.* ("These transaction-specific margins

are actual margins calculated for the respondent in question and

demonstrate the highest margins of dumping made by the respondent

when selling subject merchandise in the U.S. market.").  That is,

to determine an appropriate amount to add to the Companies'

previously calculated rates, Commerce compared the Companies'
highest transaction-specific margins to the 47.88 percent rate.

Commerce made the comparison for each company.  After
comparing Huarong's highest transaction-specific margins to
available verified rates, Commerce found that the 47.88 percent
rate was relevant.  Specifically, Commerce found:

> (1) all of Huarong's positive transaction-
> specific margins are above 47.88 percent, the
> quantity of these transactions is not
> insignificant, and these sales are not
> aberrational; (2) there are no other
> previously calculated, weighted-average rates
> from which to select as AFA that are greater
> than 47.88 percent but less than the range of
> transaction-specific margins; and (3)
> selecting a rate lower than 47.88 percent
> would not act as an effective deterrent in
> light of the high transaction-specific
> margins.  For these reasons, the transaction-
> specific margins are evidence that the 47.88
> percent rate is relevant to Huarong and
> provides the appropriate deterrent to future
> non-compliance.

*Id.* at 10.  Similarly, with respect to LMC, Commerce concluded:

> 21 percent of LMC's transaction-specific
> margins were positive (*i.e.*, greater than
> zero) and that all of these positive
> transaction-specific margins were high,
> although not quite as high as Huarong's
> positive transaction-specific margins. . . .
> [T]he Department is applying the same AFA
> rate to LMC as it is to Huarong because LMC
> identified certain transactions in the
> underlying review as its own sales, when, in
> fact, they were not. . . .  For this
> redetermination, we find that selecting 47.88
> as the AFA rate is also relevant for the
> following reasons relating to transaction-
> specific margins: (1) all of LMC's positive
> transaction-specific margins are above 47.88

> percent, the quantity of these transactions
> is not insignificant, and these sales are not
> aberrational; (2) there are no other
> previously calculated, weighted average rates
> from which to select as AFA that are greater
> than 47.88 percent but less than the range of
> transaction-specific margins; and (3)
> selecting a rate lower than 47.88 percent
> would not act as an effective deterrent in
> light of the high transaction-specific
> margins.[5]

*Id.* at 10–11 (citations omitted).  Therefore, Commerce determined that based on a comparison of the 47.88 percent rate to the Companies' transaction-specific margins, the 13.88 percent increase for Huarong and the 20.70 percent increase for LMC would serve as an appropriate deterrent to future non-compliance.

To further justify the relevance of these rates, the Department examined the variation in the Companies' margins over prior reviews.  With respect to Huarong, Commerce observed that the dumping margin assigned to that company for its sales of bars and wedges in the 1996–1997 review was a calculated 34.00 percent.  *See* Third Remand Determination at 12.  In the 1997–1998 review, Huarong received a calculated rate of 1.27 percent.  *See id.*  Huarong then received a calculated 27.28 percent rate in the 1998–1999 review, the review immediately preceding the underlying review.  *See id.*  Likewise, Commerce found that LMC has also

---

[5]    While what Commerce says is true, it is worth noting that the vast majority of the Companies' transaction-specific margins were calculated to be 0.0 percent.  *See Huraong III*, 29 CIT at __, Slip Op. 05-129 at 17 (finding that over 83 percent of the transactions were at zero margins).

received varying dumping margins from review to review.
Specifically, in the 1996–1997 review, when LMC was first
assigned a calculated rate for its sales of bars and wedges, it
received a 2.94 percent rate. *See id.*  In the 1997–1998 review,
LMC was assigned a 0.0 percent rate. *See id.*  That changed,
however, in the 1998–1999 review, where LMC was assigned a
calculated rate of 27.18 percent. *See id.*

        Thus, Commerce's chosen rate is not dramatically different
from those fluctuating rates that the Companies previously
received.  That is, it is not unreasonable for Commerce to allot
to Huarong an approximate thirteen-percentage-point increase from
its highest calculated rate of 34.00 percent as a deterrent, and
it is equally permissible for Commerce to add a twenty-
percentage-point increase over LMC's highest previously
calculated rate as a deterrent.  Thus, unlike in *Huarong III*,
where the court found a more than 110 percentage point increase
to be aberrational and punitive, the 47.88 percent rate is not so
high as to be aberrational.

        Having considered plaintiffs' arguments with respect to the
relevance of the chosen rate and Commerce's explanation of its
decision to apply a rate of 47.88 percent to the Companies' sales
of bars and wedges, the court finds that: (1) Commerce
established the reliability and relevance of the rate to both
Huarong and LMC; and (2) the method by which Commerce reached its

Court No. 01-00858                                         Page 15

conclusion was reasonable.  Therefore, the court sustains the

Third Remand Determination.


                            CONCLUSION

     Based on the foregoing, the court sustains Commerce's Third

Remand Determination and its selection of 47.88 percent as the

rate to be applied to Huarong and LMC as AFA for their sales of

bars and wedges.  Judgment shall be entered accordingly.




                              _____/s/Richard K. Eaton_____
                                    Richard K. Eaton


Dated:     January 9, 2007
           New York, New York

Slip Op. 07-4

UNITED STATES COURT OF INTERNATIONAL TRADE

```
                                    :
SHANDONG HUARONG GENERAL            :
GROUP CORPORATION and               :
LIAONING MACHINERY IMPORT           :
& EXPORT CORPORATION,               :
                                    : Before: Richard K. Eaton, Judge
            Plaintiffs,             :
                                    : Court No. 01-00858
            v.                      :
                                    :
UNITED STATES,                      :
                                    :
            Defendant.              :
                                    :
```

<u>JUDGMENT</u>

This case having been duly submitted for decision; and the court, after due deliberation, having rendered a decision herein; Now therefore, in conformity with said decision, it is hereby

ORDERED that the United States Department of Commerce's Final Results of Redetermination Pursuant to Court Remand *Shandong Huarong General Group Corporation and Liaoning Machinery Import & Export Corporation v. United States*, Court No. 01-00858, are sustained.

                                                   /s/Richard K. Eaton
                                                    Richard K. Eaton

Dated: January 9, 2007
      New York, New York

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____    By: _____
                                          Deputy Clerk